## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICTOF DELAWARE

| | | |
|---|---|---|
| WASICA FINANCE GMBH AND BLUEARC FINANCE AG, | : | UNSEALED ON JANUARY 21, 2020 |
| Plaintiffs, | : | |
| v. | : | C.A. No. 13-1353-LPS |
| SCHRADER INTERNATIONAL, INC., *et al.* | : | |
| Defendants. | : | |

### MEMORANDUM ORDER

Plaintiffs Wasica Finance GmbH and BlueArc Finance AG (together, "Wasica" or

"Plaintiffs") have sued Defendants Schrader International, Inc., Schrader-Bridgeport

International, Inc., Schrader Electronics Limited, and Schrader Electronics, Inc. (together,

"Schrader" or "Defendants") for infringement of claim 6 of Wasica's U.S. Patent No. 5,602,524

("the '524 patent"), which relates to devices for monitoring the air-pressure in the air chamber of

pneumatic tires of vehicle wheels. (*See* '524 patent at 1:9-11)

Pending before the Court are the parties' summary judgment[1] and *Daubert*[2] motions,

---

[1] To warrant summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), when all facts are viewed "in the light most favorable to the non-moving party" and "all reasonable inferences [are drawn] in that party's favor," *Scheidemantle v. Slippery Rock Univ. State Sys. Of High Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). "The non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of [its] pleadings" but, instead, "must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *D.E. v. Central Dauphin School Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014) (internal citations omitted).

[2] Federal Rule of Evidence 702 creates a "gatekeeping role for the [trial] judge" to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at

which were the subject of oral argument on November 21, 2019.  (*See* D.I. 189 ("Tr.")) Having

considered the parties' briefs and related filings, and having heard argument, IT IS HEREBY

ORDERED that:

1.      Wasica's motion for summary judgment of *inter partes* review estoppel (D.I. 133)

is GRANTED.

After Wasica filed this infringement action in July 2013, Schrader and former defendant

Continental Automotive Systems US, Inc. filed petitions for *inter partes* review ("IPR") in late-

2013 and early-2014.  (D.I. 134 at 2)  The IPR petitions contended that the '524 patent's claims

are invalid based on anticipation and obviousness.  (*See id.*)  The Court granted Schrader's

unopposed motion to stay this litigation during the pendency of the IPR proceedings.  (D.I. 20)

Ultimately, following review by the Patent Trial and Appeal Board ("PTAB") as well as the

Federal Circuit, some claims of the '524 patent (including asserted claim 6) were found to be

valid, while other claims were invalidated.  *See Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853

F.3d 1272 (Fed. Cir 2017).

In the IPR proceedings, Schrader's invalidity arguments "focused primarily" on Italian

Patent No. 1,219,753 ("Oselin").  *Id.* at 1277.  The Federal Circuit ultimately determined that

substantial evidence supported the PTAB's conclusion that claim 6 is patentable over Oselin.

---

hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  There are three distinct
requirements for admissible expert testimony: (1) the expert must be qualified; (2) the opinion
must be reliable; and (3) the opinion must relate to the facts. *See generally Elcock v. Kmart
Corp.*, 233 F.3d 734, 741-46 (3d Cir. 2000).  Hence, expert testimony is admissible if it "is based
on sufficient facts or data," "the testimony is the product of reliable principles and methods," and
"the expert has reliably applied the principles and methods to the facts of the case." Fed. R.
Evid. 702(b)-(d).  Rule 702 embodies a "liberal policy of admissibility." *Pineda v. Ford Motor
Co.,* 520 F.3d 237, 243 (3d Cir. 2008) (internal citations omitted).  Motions to exclude evidence
are committed to the Court's discretion. *See In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 749
(3d Cir. 1994).

*See id.* at 1283-87.

In the civil action here, Schrader again challenges the validity of claim 6 based on obviousness combinations that include Oselin. (*See, e.g.*, D.I. 135 Ex. 4 at 21; Ex. 5 at 8-9) In particular, Schrader seeks at trial to prove that claim 6 is invalid as obvious based on Oselin in view of 14 other patents or printed publications and one physical product – a product associated with the Chevrolet Corvette referred to as "ZR-1 Sensors."[3] While Oselin was used in the IPR, the other 14 patents and printed publications and the ZR-1 Sensors were not.[4] (*See* D.I. 134 at 5-6)

The obviousness challenges Schrader seeks to present at trial fall into three categories: (1) Oselin in view of the ZR-1 Sensors, (2) Oselin in view of the ZR-1 Sensors and in further view of any one of the 14 patents or printed publications, and (3) the ZR-1 Sensors in view of Oselin. (*See id.* at 6) Wasica's motion seeks summary judgment that Schrader is estopped, pursuant to 35 U.S.C. § 315(e)(2), from raising any of the aforementioned obviousness combinations at trial. (*See* D.I. 134 at 1)

The Patent Act provides that a "petitioner in an *inter partes* review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 [obviousness] or 103 [anticipation] and only on the basis of patents and printed publications." 35 U.S.C. § 311(b). Section 315(e)(2), the estoppel provision, provides:

---

[3] The parties agree that "ZR-1 Sensors" collectively refers to sensors manufactured for the Chevrolet Corvette ZR-1 by Clevite and EPIC Technologies. (*See* D.I. 134 at 5 n.2; D.I. 155 at 2)

[4] The Court understands from the Federal Circuit's opinion that Continental, and not Schrader, relied on U.S. Patent No. 5,109,213 ("Williams") before the PTAB. *See Wasica*, 853 F.3d at 1277. The Williams reference is one of the 14 new patents or printed publications that Schrader now relies on in this litigation. (D.I. 134 at 6)

The petitioner in an *inter partes* review of a claim in a patent . . . that results in a final written decision . . . may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review.

References that an alleged infringer "reasonably could have raised" include "any references that were known to the petitioner or that could reasonably have been discovered by a skilled searcher conducting a diligent search." *Parallel Networks Licensing, LLC v. IBM Corp.*, 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017) (relying on 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl)); *see also f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, 2019 WL 1558486, at *2 (D. Del. Apr. 10, 2019).

Physical products cannot be raised during IPR proceedings. *See Clearlamp, LLC v. LKQ Corp.*, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) ("[U]nlike in district court litigation, products cannot be offered as prior art during *inter partes* review."); *see also* D.I. 155 at 3 ("The ZR-1 Sensors are physical products, not 'patents' or 'printed publications,' and thus they could not have been used in any grounds before the PTAB under § 311(b)."); Tr. at 6, 13.  However, patents or printed publications that relate to and describe a physical product can, like other patents and printed publications, be raised in an IPR. *See, e.g., Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 WL 2605977, at *4 (E.D. Va. June 5, 2017) (estopping former-petitioner from relying on prior art product manuals that reasonably could have been raised in IPR).

Schrader does not dispute that Oselin was previously raised in the IPR or that the other 14 patents or printed publications reasonably could have been raised during the IPR. (*See* D.I. 155 at 11; D.I. 176 at 2-3)  Schrader also does not dispute that a 1990 article the parties refer to as "Siuru" (*see* D.I. 135 Ex. 5 at Attachment R) is a printed publication that discloses all of the relevant features of the ZR-1 Sensors and that Siuru reasonably could have been raised during the IPR. (*See* D.I. 134 at 16-19 (Wasica chart comparing Siuru to ZR-1 Sensors, which is

unchallenged by Schrader, based on Schrader's expert, Dr. Williams, admitting that Siuru discloses each claim element allegedly shown by ZR-1 Sensors); D.I. 155 at 2)[5]

The parties' dispute (which the parties agree the Federal Circuit has not addressed) is whether an obviousness combination – whose only relevant difference from a prior IPR combination is the inclusion of a physical product as one component, where all the relevant features of that physical product had been disclosed in a patent or printed publication that reasonably could have been raised during the IPR – is estopped as a "ground" that "reasonably could have been raised" during the IPR. That is, does IPR estoppel extend to invalidity "grounds" that include a physical product when a patent or prior art publication – to which the physical product is entirely cumulative – was reasonably available during the IPR?

Wasica contends that Schrader is so estopped. Wasica observes that moving from a printed publication (such as a manual describing a device) in an IPR proceeding to a physical product (such as the device described in the manual) in litigation merely swaps evidentiary proofs supporting the same "ground" for invalidity that was raised or reasonably could have been raised during the IPR. To Wasica, evidence is a distinct concept from "ground," and the statute estops Schrader from proceeding on the Oselin-related "grounds" of invalidity even though the specific evidentiary basis (the ZR-1 Sensors themselves, as opposed to the Siuru printed publication disclosing those sensors) on which Schrader now proceeds was unavailable in the

---

[5] Hence, this is not a case in which there is a dispute about the reasonable availability (e.g., through exercise of reasonable diligence) of a patent or prior art publication, which was at issue in *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019), a case finding the proponent of estoppel had failed to meet its burden to show that a printed publication sufficiently described the relevant physical product and was available upon a reasonable search. Nor is this a case in which there is a contention that the product (ZR-1 Sensors) is a "superior and separate reference" from the prior art publication that was available for use in the IPR. *See Star Envirotech, Inc. v. Redline Detection, LLC*, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015).

IPR.

Schrader counters that it is not estopped, reasoning that "ground" in § 315(e)(2) refers only to a precise invalidity combination based on patents and printed publications. Therefore, because the IPR statute does not allow challenges based on physical products, no "ground" including the ZR-1 Sensors could have been raised in the IPR, so no "ground" which now includes the ZR-1 Sensors is estopped.

In the Court's view, both parties' interpretations of the statutory scheme are reasonable. This conclusion is bolstered by the division amongst District Courts that have considered this (or a closely-related) question.[6] In the absence of unambiguous statutory language and precedent from the Court of Appeals, the Court finds more persuasive the view that IPR estoppel applies in the circumstances presented here.

---

[6] *Compare, e.g., Polaris Industries, Inc. v. Arctic Cat. Inc.*, 2019 WL 3824255, at *2-3 (D. Minn. Aug. 15, 2019) (rejecting IPR estoppel with respect to defendant's obviousness combinations involving vehicles, notwithstanding plaintiff's contention that defendant "reasonably could have raised those grounds during [IPR] using the manuals of the physical vehicles instead of the vehicles themselves"); *Zitovault, LLC v. International Business Machines Corp.*, 2018 WL 2971178, at *4 (N.D. Tex. Apr. 4, 2018) ("Defendants . . . could not have raised prior art systems, such as products and software, during IPR proceedings. . . . Defendants can rely on the prior art systems in their invalidity contentions to argue anticipation or obviousness.") *with Oil-Dri Corp. of Am.*, 2019 WL 861394, at *10 ("Where there is evidence that a petitioner had reasonable access to printed publications corresponding to or describing a product that it could have proffered during the IPR process, it cannot avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation."); *see also California Institute of Technology v. Broadcom Ltd*, 2019 U.S. Dist. LEXIS 141103, at *23 (C.D. Cal. Aug. 9, 2019) (holding IPR estoppel applies in litigation to "a patent challenge [that] is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' a prior art ground and 'skirt' estoppel"); *Milwaukee Electric Tool Corp. v. Snap-On, Inc.*, 271 F. Supp. 3d 990, 1026-33 (E.D. Wis. 2017) (same); *Clearlamp, LLC v. LKQ Corp.*, 2016 WL 4734389, at *8 (N.D. Ill. Mar. 18, 2016) ("The relevant inquiry, therefore, is not whether the ground is redundant of a ground that was asserted but, rather, whether the ground reasonably could have been raised. Merely being redundant to a ground that could have been asserted during *inter partes* review does not estop the alleged infringer from relying upon a ground based upon prior art that was not reasonably available during *inter partes* review.").

As Wasica observes, 35 U.S.C. § 312(a)(3) identifies as separate requirements to be included in an IPR petition "the ***grounds*** on which the challenge to each claim is based, and the ***evidence*** that supports the grounds for the challenge to each claim" (emphasis added). In this way, the Patent Act distinguishes between grounds and evidence. Since the estoppel provision, § 315(e)(2), applies to ***grounds***, a petitioner is estopped from proceeding in litigation on those ***grounds***, even if the ***evidence*** used to support those grounds was not available to be used in the IPR. *See also generally* 35 U.S.C. § 315(e)(1) (estopping IPR petitioner from requesting or maintaining IPR proceeding with respect to claim "on any ground that the petitioner raised or reasonably could have raised" in previous IPR that concluded with final written decision).

Therefore, all three categories of obviousness combinations Schrader seeks to assert at trial are estopped. Oselin was previously raised in the IPR and the 14 other patents or prior art publications reasonably could have been raised in the IPR. The Siuru 1990 prior art publication also reasonably could have been raised in the IPR and is materially identical (i.e., discloses the same claim elements) to the ZR-1 Sensors. Thus, all of the obviousness combinations challenged by the motion – that is, all of Schrader's obviousness "grounds" – "reasonably could have [been] raised during the IPR." 35 U.S.C. § 315(e)(2).[7] Accordingly, Wasica has met its burden to show that estoppel applies and Wasica's motion for summary judgment will be granted.

---

[7] The Court's decision is based on its agreement with Wasica that the statutory distinction between "grounds" and "evidence" leads to the conclusion that estoppel can apply to cumulative evidence that is offered in litigation to support the same invalidity "grounds" that were presented in an IPR. Although not the basis for the Court's decision, the Court does also share Wasica's concern that endorsing Defendants' position could "gut the estoppel provision entirely. In future litigation, defendants will simply swap out publications that were available through a diligent search with the same prior art, only in a slightly different format or in a version that could not have been found in a search (such as public white papers, presentations, and data sheets that were not widely circulated)." (D.I. 176 at 4)

2.      Schrader's motion for summary judgment of non-infringement (D.I. 119) is

DENIED.

Schrader argues that its accused CORAX receiver and ALM devices – which make up

only 10% of all receivers used with Schrader's accused sensors (D.I. 157 at 5) – do not infringe

because they perform an "autolearning function," which "is an approach where the receiver can

learn the ID codes [i.e., identification signal] from the TPMS sensors installed in its vehicle's

tires automatically without the need for any special equipment." (D.I. 121 at 7)  According to

Schrader, the autolearning process results in CORAX receivers simultaneously having both

"normal operating mode" monitoring pressure and "pairing mode" collecting and storing any

new ID codes in their operating states.  (*See id.* at 11)  Therefore, in Schrader's view, the

"switching device" limitation in claim 6 is not met.  (*Id.* at 12-28)  Schrader also argues that its

accused sensors have substantial non-infringing uses because of the purportedly non-infringing

CORAX autolearning function and because its sensors "can be used with any type of receiver

that receives pressure and ID code data, regardless of whether it uses the receiver-related

'switching device.'"  (*Id.* at 3)

Wasica, consistent with its challenge to the admissibility of Dr. Williams' testimony

(discussed below), counters that Schrader's non-infringement theory is premised on a

misapplication of the Court's claim construction order.  However, as explained in connection

with that motion, the Court is rejecting Wasica's contention, and Dr. Williams will be permitted

to present his non-infringement position.  Nevertheless, according to Wasica, it can still prove

infringement, for reasons including that the "evidence shows that vehicles incorporating CORAX

receivers included autolearning components . . . [that] were always connected to the receivers

and switched them into pairing mode so that they could collect and store IDs for the Accused

Sensors." (D.I. 157 at 11-12)

Genuine issues of material fact preclude granting summary judgment of non-infringement. For example, there is evidence in the record from which a reasonable jury could find that the CORAX receiver's autolearning function meets the "switching device" limitation in claim 6 by a single transmitter (rather than all four at the same time) switching from normal operating mode to pairing mode. (*See* D.I. 157 at 14-15; Tr. at 36-37; '524 patent at 10:28-36; D.I. 160 (Neikirk Decl.) at ¶¶ 69-73) Genuine disputes of material fact also exist concerning the magnitude of any non-infringing uses and whether such uses are "substantial."[8]

Accordingly, Schrader's motion will be denied.

3.    Wasica's motion for summary judgment that it provided Defendants with actual notice of infringement of the '524 patent through its predecessors-in-interest (Leemann and Ruchti) and/or exclusive licensee (Beru AG) under Section 287(a) is GRANTED.

The patent marking statute, 35 U.S.C. § 287(a), provides that when a patentee or patent licensee makes or sells a product practicing the patent, the patentee can only recover damages from one who infringes the patent if: (1) the patentee or licensee has marked its product in the manner specified in the statute (i.e., the infringer has "constructive notice of infringement"), or (2) the patentee actually notifies the infringer of its infringement. In the case of such "actual notice," a patentee may only recover damages for infringement occurring after notice was given.

According to Wasica, its predecessor provided Schrader with actual notice as of 2003;

---

[8] The Court also denies Schrader's motion on Wasica's allegation of induced infringement pursuant to Section 271(b), which the Court views as a further iteration of the same "switching device," "normal operating mode," and "pairing mode" limitation theory underlying Schrader's direct infringement argument. Genuine disputes of material fact exist concerning Schrader's alleged promotion and encouragement of acts that constitute infringement. (*See, e.g.*, Tr. at 26-27, 42-44) (citing evidence)

9

therefore, Wasica can pursue the maximum, 6-year period of patent damages, *see* 35 U.S.C. § 286, which here means damages from 2007, which is six years prior to Wasica filing suit against Schrader.  Schrader responds that it did not receive adequate actual notice prior to suit, so the damages period in this case begins in 2013, when suit was filed.

The Court concludes that no reasonable finder of fact – considering the undisputed facts and taking the disputed evidence in the light most favorable to Schrader, as the non-moving party – could find anything other than that Schrader received actual notice of infringement from Wasica's predecessor, Beru AG, by 2003.

Starting in 2001, the CEO of Beru AG – which, at that time, was the exclusive licensee to the '524 patent – contacted Schrader and communicated with Schrader to discuss a license.  (D.I. 122 Ex. 14 at 32-33)  As part of those discussions, Beru AG asked Schrader in a July 2001 letter "to explain [its] position regarding the question of infringement of the ['524 patent] by [Schrader's] remote tire pressure control system as installed e.g. in the Renault Laguna."  (*Id.* Ex. 15)  On October 10, 2001, Schrader had a telephone conversation with, and sent a letter to, lawyers for Wasica's predecessors-in-interest and the owners of the '524 patent at that time, Messrs. Leemann and Ruchti ("Patent Owners"), about Beru AG's license agreement.  (*Id.* Ex. 16)  The next day, counsel for Patent Owners told Schrader: "Beru AG has the right to enforce the ['524] patent in its own name and to enforce cease and desist claims and claims for damages against all patent infringers. . . .  Beru AG is authorized to prosecute the ['524] patent[].  We kindly ask you to continue communication was Beru AG."  (*Id.* Ex. 17)

Communications between Beru AG and Schrader continued in September 2002.  On September 10, 2002, Beru AG definitively stated that it had "no doubts that [Schrader's] remote tire pressure control system as installed in the Renault Laguna infringes" the '524 patent, and

moreover, that Beru AG's litigation counsel had been asked "to handle this patent infringement case . . . and to get the case going ahead." (*Id.* Ex. 15) On September 24, Schrader acknowledged receipt of that letter and further asked Beru AG to provide more detail for why it believed the '524 patent was infringed by the Renault Laguna system. (*Id.* Ex. 18) On September 30, Beru AG sent "an analysis of [Schrader's] remote tire pressure control system as installed in the Laguna [that] had been prepared . . . for Beru AG" showing alleged infringement of 12 claims in the '524 patent's European counterpart.[9] (*Id.* Ex. 19) Negotiations ultimately broke down in 2003, leading Beru AG and the Patent Owners to file suit against Schrader in Germany for infringement of the '524 patent's European counterpart.

Schrader argues that Beru AG could not have provided actual notice under Section 287(a) because, even though it was an exclusive licensee, the rights provided under the license agreement to which Beru AG was a party were insufficient to confer "patentee" status on Beru AG. (D.I. 147 at 4-7) Having considered the nine factors discussed in *Alfred E. Mann Found. Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010), and the parties' positions (D.I. 147 at 5; D.I. 174 at 2-3), the Court agrees with Wasica that Beru AG had substantial rights in the '524 patent sufficient to confer the appropriate status for actual notice purposes, *see In re Elonex Phase II Power Mgmt. Litig.*, 2002 WL 242363, at *4-5 (D. Del. Feb. 20, 2002) (finding exclusive licensee capable of providing actual notice); *see also U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1375-76 (Fed. Cir. 2007) (finding notice letter

---

[9] While Exhibit 21 indicates that Schrader was "disappoint[ed]" with Beru AG's infringement analysis, actual notice may be provided even in the absence of a detailed claim chart. *See, e.g.*, *Gart v. Logitech, Inc.*, 254 F.3d 1337 (Fed. Cir. 2001); *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Technology Ltd.*, 376 F. Supp. 3d 369, 391 (S.D.N.Y. 2019) (analyzing *Gart* and noting that requiring claim chart to provide actual notice of infringement "is not the law"). A reasonable juror could find only that such notice was given here.

sent by representative of patent assignee may be sufficient to constitute actual notice for

purposes of § 287(a)).  For example, Section 8 of the license agreement granted Beru AG

freedom to bring an infringement action on the '524 patent "in its own name" without the Patent

Owners' approval and to recoup 100% of any resulting damages.  (D.I. 122 Ex. 9 at § 8)  Despite

the license to Beru AG having been limited to the frequency range above 10 MHz (which

concerns underwater applications unrelated to this case) (*see id.* at § 2), there is no dispute that

Wasica has standing to sue in the field at issue in this case (*see* D.I. 174 at 2 n.6); *see also In re

Elonex*, 2002 WL 242363, at *4 ("A party that has standing to bring suit in its own name must

necessarily be capable of giving actual notice of infringement.").  On this record, a reasonable

jury could only find that Beru AG provided actual notice of infringement by identifying a

specific, exemplary Schrader tire pressure monitoring system and alleging it infringed the '524

patent.[10]

   Schrader alternatively argues that, in view of Wasica's approximately 10-year delay in

bringing an infringement action on the '524 patent, "it is reasonable for a fact finder to determine

that any alleged notice has become ineffective."  (D.I. 147 at 9)  According to Schrader, "no

Federal Circuit decision has had need to consider the effect of an unreasonable delay on an

alleged notice" under Section 287(a) because litigants previously addressed damages clock

disputes through a laches defense – which is no longer available after the Supreme Court's

decision in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S.Ct. 954, 967

(2017).[11]  (D.I. 147 at 8-9)  As Schrader has raised no statutory interpretation arguments,

---

[10] Having concluded that Beru AG was competent to provide actual notice on its own, the
Court need not address whether the October 11, 2001 letter sent by Patent Owners also provided
Schrader actual notice.

[11] Schrader identifies one case that purportedly addressed the ineffectiveness of delayed

identified no pertinent legislative history, and made the strategic decision not to press equitable

estoppel or laches defenses (*see* D.I. 175 Ex. 29), the Court perceives no lawful basis on which a

reasonable factfinder could find that any post-notice delay in filing suit negates the effectiveness

of that actual notice as provided in 2003.[12]

      4.      Having granted Wasica's IPR estoppel motion, Schrader's motion for summary

judgment of invalidity of claim 6 of the '524 patent based on the ZR-1 Sensors in view of Oselin

(D.I. 119) is DENIED AS MOOT.[13]

      5.      Wasica's motion for summary judgment that "none of Schrader's accused

products are licensed under the '524 patent" (D.I. 124; *see also* D.I. 125 at 1) is DENIED.

      A reasonable jury could find that Schrader has met its burden to show that at least some

of the accused devices were licensed, and/or that Schrader can prevail on its affirmative defense

of patent exhaustion. (*See* D.I. 149 at 3-4)  For example, Wasica's expert, Dr. Neikirk,

acknowledges in his report that one of the accused TPMS systems sold by Ford Motor Company

---

actual notice, *In re Yarn Processing Patent Validity Litigation (No. II)*, 602 F. Supp 159 (W.D.N.C. 1984). (D.I. 147 at 8-9)  Contrary to Schrader's assertion, *In re Yarn* addressed delay through the prism of laches and equitable estoppel, defenses which are not available here. *See id.* at 170 ("[E]ven if the [notice at issue] were held to constitute 'actual notice' twelve years later, [Patentee's] claim would be barred by laches and estoppel.").

    [12] This is not a case in which there was complete silence between the relevant parties in the period from  actual notice in 2003 and Wasica's filing of the complaint in 2013.  In fact, the parties were engaged in significant patent litigation during the intervening years, specifically in Germany on the '524 patent's European counterpart.

    [13] Were the Court to reach the merits, it would deny Schrader's motion.  The record reveals genuine disputes of material fact, including whether the prior art ZR-1 Sensors, which use constant frequency modulation, render claim 6 obvious. (*See, e.g.*, D.I. 157 at 41-42)  Schrader has also failed to present expert testimony to support its contention. (*See, e.g.*, Tr. at 69-72; *see also S.O.I.Tec Silicon On Insulator Techs., S.A. v. MEMC Elec. Maters., Inc.*, 745 F. Supp. 2d 489, 530 (D. Del. 2010) (denying motion for summary judgment of obviousness based, in part, on accused infringer's failure to cite expert testimony in support of its assertions))

incorporated receivers manufactured by a company (Lear Corporation) which appears to have licensed the '524 patent and to have paid royalties during the relevant period. (*Id.*; *see id.* Ex. J) Moreover, there is documentary and testimonial evidence in the record suggesting that certain OEMs, including Toyota (by Pacific), Ford, Hyundai, and Kia (by Lear), have paid royalties on the '524 patent. (D.I. 149 at 2; *see id.* Ex. F-I)  Accordingly, Wasica's motion will be denied.[14]

      6.     Wasica's motion to exclude non-infringement testimony from Schrader's expert, Dr. Ronald Williams, due to a purported misapplication of the Court's claim construction order with respect to the terms "normal operating mode," "pairing mode," and "constant frequency" (D.I. 127) is DENIED.

Claim 1 states: "the receiver is connected with a ***switching device*** which enables the receiver to switch from ***normal operating mode***, in which the air pressure is monitored, to ***pairing mode***, in which the receiver collects the identification signal of the transmitter and stores this as an identification signal." ('524 patent at 13:65-14:3) (emphasis added)  The Court did not construe the terms Wasica's motion is based on during claim construction.  However, in construing the term "switching device," the Court stated that the "pairing mode is in a 'nonoperating state' when the claimed device is in its normal operating mode, and the normal operating mode is in a 'nonoperating state' when the device is in pairing mode."  (D.I. 104 at 17) Dr. Williams relies on this to opine that when the receiver is switched to pairing mode, "the pressure monitoring mode is nonoperating;" from there, he concludes that claim 6 is not

---

[14] Wasica argues summary judgment on Schrader's patent exhaustion defense is proper because Schrader has "refused to identify any relevant documents, provide substantive responses to interrogatories, or provide a corporate witness relating to their license defense." (D.I. 125 at 3)  Wasica's argument, which seems to amount to a belated discovery complaint, is unavailing. Schrader has identified deposition testimony, exhibits, and statements by Wasica's own expert, Dr. Neikirk, concerning licenses from which a reasonable juror could find for Schrader on its defense. (*See* D.I. 149 at 2)

infringed when a receiver receives any air pressure information during pairing mode.  (D.I. 128 at 6-7)

Wasica has failed to demonstrate that Dr. Williams' opinion is clearly contrary to the Court's claim construction and, thus, unreliable and excludable.  Dr. Williams appears to have drawn a clear separation between a receiver's "normal operating mode" and "pairing mode," even though the Court has not explicitly made the same distinction in the claims terms it has been asked to construe.  Still, neither is Dr. Williams' understanding of the claims in conflict with the Court's construction.  Wasica's concerns can be addressed through cross-examination and the presentation of competing evidence at trial.

Wasica argues that Dr. Williams also misapplies the term "constant frequency" (D.I. 128 at 8-9), which the Court construed to mean "the modulation of digital information from the signals onto the carrier wave does not vary the frequency of the carrier wave during transmission of at least the pressure transmitting signal and identification signal" (D.I. 104 at 8-10).  During the claim construction process, the Court rejected Schrader's argument that all signals transmitted must be constant frequency.  (D.I. 104 at 8)  But that determination does not mean that Dr. Williams should be barred from opining that certain accused sensors do not infringe because they use both OOK (a constant frequency) and FSK (a non-constant frequency) during the same transmission.  (*See* D.I. 151 at 11-12)

Accordingly, Wasica's motion is denied.

7.      Schrader's motion to exclude expert testimony of Dr. Dean Neikirk (D.I. 119) is GRANTED IN PART and DENIED IN PART.[15]

---

[15] The parties agreed at the hearing that the portion of the motion directed to Dr. Neikirk's opinion on the "connected with" limitation in claim 6 is moot.  (*See* Tr. at 76-77)

The portion of Schrader's motion seeking to strike "any expert testimony or opinions based on a misapplication of the claimed 'switching device' limitation as allowing for a 4-in-1 receiver where the same, single receiver is in both modes (both the pairing and pressure monitoring states) at the same time, but allegedly operates independently for each individual associated sensor or transmitter," is DENIED.  As with Dr. Williams' opinion, the Court finds nothing in Dr. Neikirk's opinion that is in conflict with the Court's claim construction.  As also already noted, there are genuine disputes of material fact as to whether the operation of the accused tire pressure monitoring systems meet the "switching device" limitation.  Both Drs. Williams' and Neikirk's opinions will be helpful to the jury in resolving this fact dispute.

Schrader's request to strike any expert testimony or opinion, including from Dr. Neikirk, based on declarations from Ford and Nissan concerning relevant OEM receivers is DENIED. During fact discovery, Wasica subpoenaed, among others, Ford and Nissan to obtain evidence on how OEM vehicles operate with Schrader's accused sensors.  (D.I. 121 at 36)  In lieu of depositions, the parties had agreed to work together to obtain declarations from these third-party OEMs, although they never actually reached a full agreement.  (*Id.*)  Federal Rule of Evidence 703 permits Dr. Neikirk to rely on third-party declarations, notwithstanding Schrader's hearsay objection, as there is no dispute that experts in this field routinely and reasonably rely on this type of information (i.e., statements from OEMs concerning the operation of their vehicles).  *See Inline Connections Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 422 (D. Del. 2007) ("Rule 703 allows experts to use evidence that would not usually be admissible, such as, hearsay, as long as it is reasonably applied or relied upon by experts in the field for their conclusions. Rule 703 focuses on the data underlying the opinion and permits experts to use facts, information or data, if they are of a type reasonably relied upon by experts in the particular field in forming

opinions.").

Finally, Schrader's motion to preclude Dr. Neikirk from testifying as to commercial

success, and particularly his opinion as to a nexus between practicing the asserted claim and

sales of the accused products, is GRANTED.  Dr. Neikirk is a technical expert who, despite his

vast experience in the relevant industry, has not been shown to be qualified to reliably opine on

the reasons for the accused products' sales.  Dr. Neikirk is an electrical engineer and readily

admits he "is not a business analyst." (D.I. 121 Ex. G at 332-33)  While Dr. Neikirk has

considered the opinions of a fellow (damages) expert, Mr. Bakewell (*see* D.I. 157 at 27-28), the

record reveals that he has not considered other factors that may have contributed to sales of the

accused products (including, for example, government requirements, non-infringing features of

the products, and marketing).  This portion of Schrader's motion is, therefore, granted.

8.      Wasica's motion to exclude opinions of Schrader's damages expert, Dr. Christine

Meyer (D.I. 130), is DENIED.

Wasica's request to preclude Dr. Meyer from testifying about non-infringing alternatives

is DENIED.  Wasica argues that Dr. Meyer's opinion on non-infringing alternatives is unreliable

because she "did not quantify the full cost to design and implement any of the NIAs described,"

so "she is unable to use these facts to construct a quantitative upper bound on the willingness to

pay." (D.I. 131 at 5) (quoting Ex. 1 (Meyer Rpt. at ¶ 48))  Schrader points out that Dr. Meyer's

opinion is reliably based on testimony of engineers with relevant knowledge.  (*See* D.I. 153 at 4)

Wasica's criticisms of Dr. Meyer's opinions go to the weight and not admissibility of her

opinions.

Wasica's request to preclude Dr. Meyer from testifying about the non-exclusive Lear

License is DENIED.  Experts may present reasonable royalty rate opinions based on licenses

where those licenses are "sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-26 (Fed. Cir. 2009).  Wasica argues that Dr. Meyer cannot offer an opinion based on the confidential Lear license because she has not seen the license and does not know its terms.  (D.I. 131 at 6)  Schrader responds that "Dr. Meyer did analyze the nature of the Lear Agreement, considering factors such as the same or similar licensed technology, the royalty structure, identity of the parties, and date of licensing." (D.I. 153 at 6)  Schrader further represents that "the undisputed evidence is that the Lear Agreement is real and has the same non-exclusive nature as the hypothetical negotiation license, for the same technology, and at the same royalty rate as the benchmark Beru license," and further states (citing Wasica's own expert) "[t]here seems to be no dispute that the royalty rate of the Lear Agreement was consistent with the original exclusive (Beru/Doduco) license royalty rate of 0.66%."  (D.I. 153 at 5)  Accordingly, the Court agrees with Schrader that Dr. Meyer's testimony relies on sufficient facts, will help the jury, and is sufficiently reliable to meet the requirements of Rule 702.  *See, e.g.*, *Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F.Supp.3d 319, 324 (D. Del. 2016).

Finally, Wasica's request that Dr. Meyer be precluded from testifying that the reasonable royalty for the '524 patent is lower than the rate contained in actual licensees to the '524 patent, because only claim 6 is asserted against Schrader, is DENIED.  Wasica insists that Dr. Meyer's opinion is unreliable because it disregards contractual provisions in the comparable licenses that require a full royalty payment unless every claim in the patent is invalidated.  (D.I. 131 at 7)  The Court agrees with Schrader that this dispute goes to the weight and not admissibility of Dr. Meyer's testimony.  (D.I. 153 at 7-10)  It will be for the jury to evaluate Dr. Meyer's opinion that a hypothetical negotiation for a license to just claim 6 would result in a lower royalty than a

license to the entirety of the '524 patent.  *See generally Trell v. Marlee Elecs. Corp.*, 912 F.2d

1443, 1447 (Fed. Cir. 1990) ("Failure to consider the fact that the [comparable] license . . .

encompassed the right to other inventions compels reversal.").

      9.     IT IS FURTHER ORDERED that because this Memorandum Order has been

filed under seal, the parties shall meet and confer and shall, no later than **January 16, 2020**,

submit a proposed redacted version, in the event any party believes it can satisfy the standard for

keeping any portion of this Order under seal.  Thereafter, the Court will file a publicly-available

version.

January 14, 2020
Wilmington, Delaware

                        HONORABLE LEONARD P. STARK
                        UNITED STATES DISTRICT JUDGE