## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WASICA FINANCE GMBH and BLUEARC FINANCE AG, | |
| Plaintiffs, | |
| v. | C.A. No. 13-1353-LPS |
| SCHRADER INTERNATIONAL, INC., SCHRADER-BRIDGEPORT INTERNATIONAL, INC., SCHRADER ELECTRONICS LIMITED, and SCHRADER ELECTRONICS INC. | |
| Defendants. | |

## <u>JOINT PROPOSED FINAL PRETRIAL ORDER</u>

Susan E. Morrison (#4690)
Jeremy D. Anderson (#4515)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
morrison@fr.com
janderson@fr.com

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
(617) 542-5070
scherkenbach@fr.com

William R. Woodford
Jason M. Zucchi
James Huguenin-Love
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
(612) 335-5070
woodford@fr.com
zucchi@fr.com
huguenin-love@fr.com

*Attorneys for Plaintiffs Wasica Finance
GmbH and Bluearc Finance AG*

Jeremy A. Tigan (#5239)
Stephen Kraftschik (#5623)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jtigan@mnat.com

Bryan P. Collins
Robert M. Fuhrer
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
bryan.collins@pillsburylaw.com
robert.fuhrer@pillsburylaw.com

*Attorneys for Defendants Schrader International,
Inc., Schrader-Bridgeport International, Inc.,
Schrader Electronics Limited, and Schrader
Electronics Inc.*

This matter comes before the Court for a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

## I.     Nature of the Case[1]

This is a patent infringement action filed by Plaintiffs Wasica Finance GmbH and Bluearc Finance AG ("Plaintiffs") against Defendants Schrader International, Inc., Schrader-Bridgeport International, Inc., Schrader Electronics Limited, and Schrader Electronics Inc. (collectively "Schrader" or "Defendants").[2]  Plaintiffs allege that Defendants indirectly infringed claim 6 of Plaintiffs' U.S. Patent No. 5,602,524 ("the '524 patent"), which expired during the course of this case on February 26, 2014.  Specifically, Plaintiffs allege that Defendants indirectly infringed claim 6 of the '524 patent by inducing others, including customers and end users, to directly infringe claim 6 by making, using, selling, offering for sale, and importing into the United States vehicles that incorporated Defendants' sensors and/or receivers for tire pressure monitoring systems (TPMS).  Plaintiffs also allege that Defendants contributed to the infringement of claim 6 of the '524 patent by others, including customers and end users, that directly infringed claim 6 by making, using, offering for sale, selling and/or importing into the United States vehicles that incorporated Defendants' sensors and/or receivers for TPMS. Plaintiffs seek damages to compensate for Defendants' infringement in the form of a reasonable royalty, as well as interest, costs, and attorney fees.  Defendants allege that they do not infringe.

---

[1] The parties will provide a separate set of preliminary instructions to be read to the jury following voir dire and do not intend that this section of the Pretrial Order be read to the jury.

[2] Defendants represent that Schrader International, Inc. ceased to exist after an acquisition by Sensata Technologies in 2014.  Defendants further represent that any liability to Plaintiffs by Schrader International, Inc. in this case is assumed by the remaining Schrader Defendants. Based on these representations, the parties agree that Schrader International, Inc. may be dropped as a defendant in this case.

Plaintiffs originally filed suit in this Court on July 30, 2013.  Defendants filed their answer on February 24, 2014.

Shortly after filing the case, Defendants filed a petition for IPR of the '524 patent.  The Court stayed the litigation in September 2014.  Over the next three years, the '524 patent claims were evaluated by the PTAB and Federal Circuit.  Claims 6-8 and 20 were not invalidated during the IPR proceedings nor on appeal.

Following the conclusion of the IPR proceedings, the Court lifted the stay and Plaintiffs moved forward with allegations that Defendants indirectly infringed claim 6 of the '524 patent.

On August 12, 2019, the parties filed summary judgment and *Daubert* motions. Plaintiffs' dispositive motions sought judgment that Defendants received actual notice of infringement, Defendants' sensors and receivers are not licensed, and that Defendants' obviousness allegations are subject to IPR estoppel.  Plaintiffs' *Daubert* motions sought to exclude certain opinions of Schrader's expert Dr. Meyer relating to damages, and testimony based on the application of incorrect claim constructions by Schrader's technical expert Dr. Williams.  (D.I. 120, 125, 128, 131, and 134.)  Defendants' motions sought summary judgment of noninfringement and obviousness, as well as the exclusion of testimony from Plaintiffs' liability expert, Dr. Neikirk.  (D.I. 121.)

On January 14, 2020, the Court issued a Memorandum Order addressing the parties' summary judgment and *Daubert* motions.  (D.I. 193.)  The Court granted Plaintiffs' motion for summary judgment of IPR estoppel, finding that "all three categories of obviousness combinations Schrader seeks to assert at trial are estopped."  (*Id.* at 2-7.)  The Court also granted Plaintiffs' motion for summary judgment that they provided Defendants with actual notice of infringement of the '524 patent by 2003, through their predecessors-in-interest and/or exclusive

licensee, under Section 287(a).  (*Id.* at 9-13.)  The Court denied Plaintiffs' other summary judgment and *Daubert* motions.  The Court granted-in-part and denied-in-part Defendants' *Daubert* motion, precluding Dr. Neikirk from testifying about "a nexus between practicing the asserted claim and sales of the accused products."  (*Id.* at 15-17.)  And the Court denied Defendants' motions for summary judgment of noninfringement and obviousness.

Both parties seek a jury trial on all issues triable by a jury.  The Court has scheduled a pretrial conference for January 31, 2020 at 9:00 a.m.  A 5-day Jury Trial is scheduled to begin on February 10, 2020.  The issues to be tried or otherwise resolved by the Court include:

1.  Whether Defendants indirectly infringed claim 6 of the '524 patent under 35 U.S.C. § 271(b) or (c).

2.  Whether Plaintiffs are entitled to damages from Defendants under 35 U.S.C. § 284.

3.  Whether Plaintiffs are entitled to their attorney fees and costs under 35 U.S.C. § 285.

4.  Whether Defendants are entitled to their attorneys' fees and costs under 35 U.S.C. § 285 in connection with defending against Plaintiffs' claims.

## II.  Jurisdiction

As noted above, this is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.  The Court's jurisdiction is proper under 28 U.S.C. §§1331 and 1338(a), and is not disputed.  Venue is proper under 28 U.S.C. § 1400 and the Court has personal jurisdiction over the still existing parties.

## III.  Facts

### A.  Uncontested Facts

Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court, and will be charged for the time used to do so.

The following facts are not disputed or have been agreed to or stipulated to by the parties:

3

1.      Wasica Finance GmbH is a Swiss company with a place of business at Schwanderstrasse 27, 6063 Stalden, Switzerland.  Mr. Karl Leemann is the primary owner of Wasica Finance GmbH.

2.      BlueArc Finance AG is a Swiss company with a place of business at Schwanderstrasse 27, 6063 Stalden, Switzerland.  Mr. Heinz Ruchti is the primary owner of BlueArc Finance AG.

3.      Schrader International, Inc. was a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 9635 Maroon Circle, Suite #420, Englewood, Colorado 80112.

4.      Schrader Electronics Limited is a corporation organized and existing under the laws of Northern Ireland, with its principal place of business at 11 Technology Park, Belfast Road, Antrim, BT41 1QS, United Kingdom.

5.      Schrader Electronics, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 529 Pleasant St, Attleboro, MA, 02703, and had a manufacturing facility in Tennessee until around 2016.

6.      Schrader-Bridgeport International, Inc. was a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Altavista, Virginia.

7.      The patent-in-suit is U.S. Patent No. 5,602,524 ("the '524 Patent"), which is titled "Device for Monitoring the Air-Pressure in Pneumatic Tires Fitted on Vehicle Wheels."

8.      The '524 patent has an effective filing date of February 26, 1992, and issued on February 11, 1997.  The '524 patent expired on February 26, 2014.

9.      The named inventors of the '524 patent are Markus Mock and Ernst Völlm.

10.    On November 15, 1993, Markus Mock and Ernst Völlm assigned their interest in the '524 patent to Uwatec AG.  On February 18, 1997, Uwatec AG assigned its interest in the '524 patent to Karl Leemann and Heinz Ruchti.  On November 3, 2006, Karl Leemann assigned his interest in the '524 patent to plaintiff Wasica Finance GmbH.  On November 3, 2006, Heinz Ruchti assigned his interest in the '524 patent to plaintiff BlueArc Finance AG.  Plaintiffs own the '524 patent by assignment.

11.    Plaintiffs filed the Complaint against the Defendants in this case on July 30, 2013.

12.    Plaintiffs accuse Defendants of indirectly infringing claim 6 of the '524 patent based on their activities related to TPMS receivers (including at least the CORAX receiver and the ALM) that were incorporated by others into the TPMS of vehicles (collectively the "Accused Receivers") made, used, sold, offered for sale, and/or imported into the United States.

13.    Plaintiffs accuse Defendants of indirectly infringing claim 6 of the '524 patent based on their activities related to the TPMS sensors listed below that were incorporated by others into the TPMS of vehicles (collectively the "Accused Sensors") made, used, sold, offered for sale, and/or imported into the United States.

14.    The Accused Sensors function identically in all material respects relevant to the sensor-related limitations of claim 6 of the '524 patent, with the exception of the modulation scheme used by the sensors to transmit signals to a receiver.  The modulation schemes used by the Accused Sensors include an on-off keying modulation scheme (OOK) or the use of both OOK and a frequency-shift keying modulation scheme (OOK+FSK).  The Accused Sensors fall into two categories, "OOK" and "OOK+FSK."

15.    The OOK+FSK category includes the Accused Sensors in the following table (identified in PTX18), which transmit tire pressure information and unique identification

5

information for each particular TPMS sensor using both on-off keying (OOK) and frequency-shift keying (FSK) modulation schemes.  All of the OOK+FSK Accused Sensors operate and function the same in all material respects relevant to claim 6.

| Part No. | Description | Modulation Scheme |
|---|---|---|
| 70503465 | Ford Snap in Service Tx 433 | OOK + FSK |
| 70503317 | Ford Snap in Service Tx Maxell | OOK + FSK |
| 70503634 | Ford Gen4 Clamp In Tx 433MHz SERVICE | OOK + FSK |
| 70503356 | Ford Snap in Maxell Tx 315 | OOK + FSK |
| 70503499 | Ford Gen4 Clamp In Tx  433MHz | OOK + FSK |
| 70503361 | Ford Snap in Tx 433MHz Maxell | OOK + FSK |
| 70503217 | Ford Snap-in | OOK + FSK |
| 70503317 | Ford Snap in Service Tx | OOK + FSK |
| 70503390 | Ford Snap in Service Tx TPMS 12 | OOK + FSK |
| 70503450 | FORD Gen5 Snap In Tx Japan 314.9MHz | OOK + FSK |
| 70503633 | Ford Gen5 Clamp In Tx 315MHz SERVICE | OOK + FSK |
| 70503536 | FORD Edison Gen5 433 Snap In Tx | OOK + FSK |
| 70503498 | Ford Gen5 Clamp In Tx 315MHz | OOK + FSK |
| 70503466 | FORD Gen5 SI Service Tx Japan 314.9 | OOK + FSK |
| 70503648 | FORD Gen 5 Edison Snap in Tx 315 SERVICE | OOK + FSK |
| 70503683 | Ford Canada Snap in Service (EDISON) Tx | OOK + FSK |
| 70503307 / 70503449 70503534 / 70503535 | Ford Gen5 Snap in 315MHz Tx | OOK + FSK |
| 70503341 | Ford Snap-in | OOK + FSK |
| 70503397 / 70503618 | FORD Gen 5 Edison Snap in Tx 315 | OOK + FSK |
| 70503690 | FORD Gen6 PAL Faraday LG SI Tx 315 (Expendable) BOM | OOK + FSK |
| 70503691 | FORD Gen6 PAL Faraday HG SI Tx 433 (Expendable) BOM | OOK + FSK |

16.     All of the Accused Sensors in the OOK+FSK category are represented by the following product (identified in PTX57):

| Customer | ASIC | BOM # | Part # | OEM Part # | Modulation Scheme |
|---|---|---|---|---|---|
| Ford | GEN4 | 90518213 | 70503217 | 9L3T-1A180-AE | OOK+FSK |

6

17.     The schematics and other technical information for the OOK+FSK representative product are representative of the schematics and other technical information for all OOK+FSK Accused Sensors for the purpose of determining whether the OOK+FSK Accused Sensors infringe claim 6.

18.     The OOK category includes the following Accused Sensors in the following table (identified in PTX18), which transmit tire pressure information and unique identification information for each particular TPMS sensor using an OOK modulation scheme.  All of the OOK Accused Sensors operate and function the same in all material respects relevant to claim 6.

| Part No. | Description | Modulation Scheme |
|---|---|---|
| 70503069 | 40700 CK002 Nissan Quest | OOK |
| 70503161 | Nissan Quest | OOK |
| 70503064 | Nissan Z Car | OOK |
| 70503027 | Nissan Q45 Tyre Pressure Sensor | OOK |
| 70503096 | 4L2T1A150BA Ford Transmitter | OOK |
| 70503174 | Ford 5L7T AB | OOK |
| 70503135 | 5L7T 1A150AA Ford Transmitter | OOK |
| 70503028 | Tyre Pressure Sensor Chrysler | OOK |
| 70503074 | Mitsubishi MN103081 Sensor | OOK |
| 70503122 | Mitsubishi 315Mhz Tx | OOK |
| 70503173 | Tyre Pressure Sensor Mitsubishi | OOK |
| 70503103 | Isuzu Tyre Pressure Sensor 433Mhz | OOK |
| 70503097 | Tyre Pressure Sensor | OOK |
| 70503093 | Sensor 315 ASK PWM GenJ | OOK |
| 70503117 | GM Cadillac | OOK |
| 70503120 | Corvette Export | OOK |
| 70503131 | GenJ Forrest Green | OOK |
| 70503238 | Aftermarket Volvo 320156 | OOK |
| 70503365 | A/M Chrylser Gen Alpha Wal C9 Tx | OOK |
| 70503392 | Mercedes Gen Alpha WAL C9.7 | OOK |
| 70503306 | GenAlpha C9 Tx | OOK |
| 70503294 | DCX GenAlpha Tx A0035400217 | OOK |
| 70503261 | Mercedes Tx433MHz Assy BOM | OOK |
| 70503547 | Chrysler Gen Alpha WAL C9 Tx 433 | OOK |
| 70503550 | A/M Chrylser Gen Alpha Wal C9 Tx | OOK |

| Part No. | Description | Modulation Scheme |
|---|---|---|
| 70503434 | Stem Asm - Tire Valve | OOK |
| 70503301 | GM GenJ Tx AM 315MHz Man RSw  - BOM | OOK |
| 70503159 | GME Wal | OOK |
| 70503162 | GM GenJ Tx AM 315MHz Man RSw  - BOM | OOK |
| 70503177 | 92186507 433.92MHz Sensor | OOK |
| 70503179 | Nissan Gen3 40700 JA01A | OOK |
| 70503197 | Nissan Gen3 40700 JA01B | OOK |
| 70503284 | Amkt Nissan Gen3 90518167 | OOK |
| 70503308 | Gen3 HSG US Dark Green 40700 JA02B | OOK |
| 70503323 / 70503324 | Chrysler WAL Snap-In 433MHz | OOK |
| 70503599 | Merc Gen Gamma Gen4 Tx 433 BOM | OOK |
| 70503176 / 70503314 | Mercedes Snap-in Tx | OOK |
| 70503486 | A/MChrysler WAL SI 433 Tx Maxell | OOK |
| 70503372 / 70503426 | Chrysler WAL Snap in Tx Max Diff | OOK |
| 70503372 / 70503426 | Chrysler WAL SI Tx Max Diff-OAKLEY | OOK |
| 70503670 | Fiat Ducato Gen Gamma Tx 433 | OOK |
| 70503335 | Merc Gen Alpha WAL II Tx | OOK |
| 70503464 | Nissan SG3.1 HSG (US) Tx 315 6064 | OOK |
| 70503479 | Nissan Q45 GEN3.1 LG Tx 315 | OOK |
| 70503481 | Nissan Z CAR GEN3.1 LG Tx 315 | OOK |
| 70503495 | Nissan SG3.1 HSG (US) Tx 315 6064 | OOK |
| 70503626 | A/M Nissan HP Tx 315 | OOK |
| 70503589 | Nissan Gen3.1 US Tx 433 | OOK |
| 70503496 | Nissan QUEST GEN3.1 LG Tx 315 | OOK |
| 70503497 | Nissan QUEST GEN3.1 CS Tx 315 | OOK |
| 70503285 | Amkt Nissan Gen3 | OOK |
| 70503183 | AM Quest 320069 | OOK |
| 70503184 | AM Quest 320161 | OOK |
| 70503185 | AM Z Car 320064 | OOK |
| 70503446 | Nissan Gen3.1 Tx 433 | OOK |
| 70503357 | Nissan G3.1 High Pressure 315 | OOK |
| 70503386 | Nissan SG3.1 HSG (blue) Tx 315 6064 | OOK |
| 70503374 | Nissan SG3.1 (grey) 40700 1AA0C | OOK |
| 70503376 | Mitsubishi Gen3.1 CS Tx 315 | OOK |
| 70503286 | Aftermarket Mitsubishi Gen2 | OOK |
| 70503213 | Amkt 320034 MMC id 215 | OOK |
| 70503383 | Mitsubishi Gen3.1 Large Grom Tx 315 | OOK |
| 70503400 | Mitsubishi Gen3.1 LG Tx 433 | OOK |
| 70503366 | GM Epsilon II WAL Gen2 433MHz Tx | OOK |

| Part No. | Description | Modulation Scheme |
|---|---|---|
| 70503298 | GM08.5 SS 433MHz 25880395 | OOK |
| 70503414 / 70503492 | GM Epsilon II WAL Gen2 433 Maxell | OOK |
| 70503415 / 70503493 | GME Epsilon I Gen2 WAL Tx 433MHz | OOK |
| 70503258 / 70503259 70503288 / 70503289 | GM08 SS 315MHz Snap-in | OOK |
| 70503153 | GM07 315MHz Snap-in 15254101 | OOK |
| 70503164 | GM07 15254102 | OOK |
| 70503187 | Epsilon II Snap in 315MHz Tx FCAST | OOK |
| 70503212 / 70503248 | GM08 315MHz 15922396 | OOK |
| 70503214 / 70503245 | GM07.5 Snap In 315MHz TX - BOM | OOK |
| 70503228 / 70503250 | GM08 Snap-in 25789964 | OOK |
| 70503227 | GMO7.5 Snap In Tx 433MHz | OOK |
| 70503252 | Aftermarket GM Dat | OOK |
| 70503198 | Subaru Snap-in Tx | OOK |
| 70503354 | Subaru Snap In SS Maxell  Tx 315 | OOK |
| 70503236 | A/Mkt Subaru 320081 | OOK |
| 70503510 | Subaru LG Gen3.1 315MHz Tx | OOK |
| 70503281 | Amkt Subaru Gen4 90518203 | OOK |
| 70503235 | a/m Suzuki 320087 | OOK |
| 70503624 | A/M Volvo Snap In Max Diff Tx 315 | OOK |
| 70503471 | FORD Gen2/3.1 MaxBatt Tx 315 BOM | OOK |
| 70503472 | FORD Gen2/3.1 MaxBatt Tx 433 BOM | OOK |
| 70503472 | Ford  Service Gen 2 Tx 433MHz | OOK |
| 70503143 | AfterSales Ford Gen2 Tx433 BOM | OOK |
| 70503144 | AfterSales Ford Gen2 Tx315 BOM | OOK |
| 70503472 | 4L2T1A150BA Ford Transmitter | OOK |
| 70503471 | Ford Canada Service 5L1Z 1A150 AAFC | OOK |
| 70503471 | Ford Canada Service Tx TPMS 2 | OOK |
| 70103019 | INDIAN MB Valve Stem Tx BOM | OOK |
| 70503199 | Amkt GM07 433MHz 320154 | OOK |
| 70503396 / 70503639 | GM Gen 5 Edison Snap in Tx 315 | OOK |
| 70503398 / 70503439 | Epsilon II Snap in 314.9MHz Tx | OOK |
| 70503399 / 70503447 | GM Gen5 Snap In Tx 433 MHz | OOK |
| 70503427 | Gen5 ASIC GenJ enc blue Tx 433 | OOK |
| 70503428 | GM Gen5/ GenJ Short Stem Tx 315 | OOK |
| 70503430 | GMX272  Gen J enc Gen 5 Asic Tx 315 | OOK |

| Part No. | Description | Modulation Scheme |
|---|---|---|
| 70503233 / 70503437 70503431 / 70503438 | GM Gen5 Snap In Tx 315MHz | OOK |
| 70503436 | Gen5 ASIC GenJ enc grey Tx 314.9 | OOK |
| 70503468 | OPEL Gen2/5 Max Batt Tx 433 BOM | OOK |
| 70503524 | GM Cadillac | OOK |
| 70503525 | GM CORVETTE Gen2 MAXELL Tx 433 | OOK |
| 70503555 | GM HS Gen Gamma WAL  Tx 433 BOM | OOK |
| 70503556 | GM HS Gen Gamma 314.9 Tx BOM | OOK |
| 70503557 | GM Gen 5 Edison Snap in Tx 314.9 | OOK |
| 70503567 / 70503568 70503575 / 70503576 | GM Gen5 Snap In Tx 314.9MHz | OOK |
| 70503569 / 70503570 70503581 / 70503582 | GM Gen5 Snap In Tx 433MHz | OOK |
| 70503571 / 70503572 70503573 / 70503574 | GM Gen5 Snap In Tx 315MHz | OOK |
| 70503756 | GM Gen5 Faraday Basic LG Tx 314.9 | OOK |
| 70503768 | GM Gen5 Faraday Basic LG Snap in Tx 315 | OOK |
| 70503068 | GMX295 JAPAN | OOK |
| 70503115 | GenJ PWM | OOK |
| 70503116 | GenJ Man black | OOK |
| 70503107 | GM PWM 102 Tyre Pressure Sensor | OOK |
| 70503095 | GM Europe Sensor | OOK |
| 70503191 | Forrest Green 320131 | OOK |
| 70503192 | GMX272 320162 | OOK |
| 70503203 | GM07 Aftermarket | OOK |
| 70503237 | Amkt Opel Gen3 90518078 | OOK |
| 70503627 | A/M Gen5 ASIC GenJ enc grey Tx 314.9 | OOK |
| 70503137 | AfterSales GM Gen2 Tx315MHz BOM | OOK |
| 70503140 | AfterSales GMTruck Tx 51PSI BOM | OOK |
| 70503141 | AfterSales GM Tx315 102psi PWM BOM | OOK |
| 70503432 | A/M  Epsilon II Snap in 314.9MHz Tx | OOK |
| 70503254 | A/mkt 328004 | OOK |
| 70503139 | Aftersales 20115 | OOK |
| 70503474 | Chrysler Gen2/5 Max Batt Tx 433 BOM | OOK |
| 70503698 | Chrysler Gen5 WAL II Snap in Tx 433 | OOK |
| 70503145 | AfterSales DC Gen2 Tx433 BOM | OOK |
| 70503693 / 70503696 | Subaru Gen5 Edison Snap in Tx 315 | OOK |
| 70503688 | Isuzu Gen2 MAXELL Tx 433 | OOK |
| 70503604 | Pre-programmed EZ Sensor 315 28204EZ | OOK |
| 70503605 | Pre-programmed EZ Sensor 315 20064EZ | OOK |
| 70503607 | Pre-programmed EZ Sensor 315 20087EZ | OOK |
| 70503619 | Pre-Programmed EZ Sensor 315 28206EZ | OOK |

| Part No. | Description | Modulation Scheme |
|---|---|---|
| 70503620 | Pre-Programmed EZ Sensor 315 28167EZ | OOK |
| 70503552 | OTR SENSOR LOW POWER 433MHz | OOK |
| 70503199 | Amkt GM07 | OOK |
| 70503732 | Subaru Snap In SS Maxell  Tx 315 US | OOK |

19.     All versions of the Accused Sensors in the OOK category are represented by either of the following representative products (identified in PTX57):

| Customer | ASIC | BOM # | Part # | OEM Part # | Modulation Scheme |
|---|---|---|---|---|---|
| Mercedes | GEN3 | 90518251 | 70503261 | 56029400AA | OOK |
| Mitsubishi | GEN2 | 90518129 | 70503122 | 4250A030 | OOK |

20.     The schematics and other technical information for the OOK representative products above are representative of the schematics and other technical information for all OOK Accused Sensors for the purpose of determining whether the OOK Accused Sensors infringe claim 6.

**B.     Plaintiffs Statement of Contested Facts that Remain To Be Litigated**

To the extent that Plaintiffs' statement of issues of law set forth below contain issues of fact, those issues are incorporated herein by reference.  Plaintiffs also incorporate by reference their briefs and statements submitted in connection with motions for summary judgment, *Daubert* motions, and *in limine* requests.  Plaintiffs also incorporate by reference their expert reports and interrogatory answers served in this case.  Should the Court determine that any issue identified below as an issue of fact is more appropriately considered an issue of law, Plaintiffs incorporate such issues by reference into their statement of issues of law.  By including a fact herein, Plaintiffs do not assume the burden of proof or production with regard to that fact.

Plaintiffs' identification of issues of fact that remain to be litigated is based in part on Plaintiffs' understanding of Defendants' arguments regarding their non-infringement, damages, and licensing/exhaustion defenses, on the pleadings and discovery in this action to date, on Defendants' interrogatory responses, on Defendants' representations made in hearings before the Court, and on Defendants' expert reports.

Plaintiffs reserve the right to revise this statement as necessary in light of the Court's decisions on any evidentiary motions, or in view of any additional information received from Defendants, e.g., Defendants' identification or introduction of further or different claims, issues of law, or issues of fact to be litigated.  In addition, by providing this statement, Plaintiffs do not concede that all of the recited issues are appropriate for trial.

Subject to the foregoing, Plaintiffs provide the following statement of issues of fact that remain to be litigated.

1. **Indirect Infringement:** Plaintiffs will prove by a preponderance of the evidence that Defendants indirectly infringed claim 6 of the '524 patent by inducing direct infringement by third parties (such as their customers and end-users).  Plaintiffs will also prove by the preponderance of the evidence that Defendants indirectly infringed claim 6 by contributing to the direct infringement of third parties (such as their customers and end-users).

2. **Damages:**  Plaintiffs will prove by a preponderance of the evidence that they are entitled to compensatory damages in the form of a reasonable royalty as set forth by Mr. Chris Bakewell in his expert reports and deposition in this matter, including the appropriate date of the hypothetical negotiation.

3. The rate of prejudgment interest to which Plaintiffs are entitled and whether it should be compounded, which are issues for the Court to determine.

12

4.      The costs to which Plaintiffs are entitled, which are for the Court to determine.

5.      Whether Plaintiffs are entitled to a determination that this is an exceptional case and, if so, whether Plaintiffs are entitled to an award of their attorneys' fees.

6.      **Licensing/Exhaustion**: Plaintiffs will show that Defendants cannot meet their burden of proving by a preponderance of the evidence that their accused products were licensed and/or subject to patent exhaustion.

### C.      Defendants Statement of Contested Facts that Remain To Be Litigated

To the extent that Defendants' statement of issues of law set forth below contain issues of fact, those issues are incorporated herein by reference.  Defendants also incorporate by reference their briefs and statements submitted in connection with motions for summary judgment, *Daubert* motions, and *in limine* requests.  Defendants also incorporate by reference their expert reports and interrogatory answers served in this case.  Should the Court determine that any issue identified below as an issue of fact is more appropriately considered an issue of law, Defendants incorporate such issues by reference into their statement of issues of law.  By including a fact herein, Defendants do not assume the burden of proof or production with regard to that fact. With respect to Plaintiffs' allegations that the '524 patent is infringed, Plaintiffs alone bear the burden of proof.

Defendants' identification of issues of fact that remain to be litigated is based in part on Defendants' understanding of Plaintiffs' arguments regarding their infringement contentions, on the pleadings and discovery in this action to date, on Plaintiffs' interrogatory responses, on Plaintiffs' representations made in hearings before the Court, and on Plaintiffs  expert reports.

Defendants reserve the right to revise this statement as necessary in light of the Court's decisions on any evidentiary motions, or in view of any additional information received from Plaintiffs, *e.g.*, Plaintiffs' identification or introduction of further or different claims, issues of

law, or issues of fact to be litigated.  In addition, by providing this statement, Defendants do not concede that all of the recited issues are appropriate for trial.

Subject to the foregoing, Defendants provide the following statement of issues of fact that remain to be litigated.

7.      **License/Exhaustion:**  Defendants will prove by a preponderance of the evidence that the Accused Systems were licensed and/or subject to patent exhaustion.

8.      **Hypothetical Negotiation:**  The parties dispute the correct hypothetical negotiation date and the reasonable royalty rate for any alleged infringement.

9.      Prior owners of the '524 patent include only Uwatec AG and Messrs. Leemann and Rutchi.

10.     Plaintiffs and/or prior owners of the '524 patent never sold any products covered by the '524 patent.

11.     Plaintiffs and/or prior owners of the '524 patent received license royalties for the '524 patent.

12.     Former licensees of the '524 patent include Doduco GmbH, BorgWarner BERU Systems ("Beru"), Lear Corporation, Pacific Industrial Co., Ltd., Huf Electronics GmbH, and Continental Automotive Systems, Inc.

13.     None of the former '524 patent licensees marked any of its products covered by the '524 patent pursuant to 35 U.S.C. § 287.

14.     The '524 patent Lear license included a royalty rate of 0.66% per transmitter. Schrader's main competitors in the Original Equipment Manufacturer ("OEM") market for TPMS transmitters in the United States, including the Accused Sensors, during the relevant

damages time period (2007-2014) were Continental, Huf (formerly known as Beru), Pacific and TRW.

15.    From 2007 through 2014, Schrader held approximately a 45% to 50% share of the United States OEM TPMS market for transmitters, including the Accused Sensors.

16.    Clevite Industries, Inc. and later EPIC Technologies, Inc., sold TPMS sensors ("ZR-1 Sensors") as part of an overall TPMS system to General Motors for installation and use on Chevrolet ZR-1 model Corvettes before the critical date of the '524 patent (February 26, 1992).

17.    The ZR-1 Sensors sold before the critical date of the '524 patent to GM used an on-off keying (OOK) modulation scheme.

18.    Frequency shift keying (FSK) is not a modulation scheme covered by the "constant frequency" limitation of claim 6 of the '524 patent.

19.    All of the Accused Sensors are compatible for use with both an infringing and non-infringing TPMS receiver.

20.    The CORAX Accused Receiver sold to Chrysler includes an auto-learning function where the receiver can learn the ID codes ("identification signal") from the TPMS sensors installed in its vehicle's tires automatically without the need for a service tool.

21.    The CORAX's auto-learn function starts when the vehicle drives over 15MPH and receives ID and pressure data from its Accused Sensors.

22.    The CORAX auto-learn function is capable of recognizing that it is repeatedly receiving a new Accused Sensor ID code and no longer receiving the old replaced Accused Sensor one.

23.     Once the CORAX auto-learn function has received the new ID a sufficient number of times (*e.g.*, seven), the new Accused Sensor ID code is stored, replacing the old, replaced Accused Sensor ID code.

24.     During the auto-learn function the CORAX still monitors for pressure data from any previously learned Accused Sensors.

25.     The CORAX does not require a service tool in order to have new Accused Sensor ID code programmed.

26.     Even if a service tool is used with the CORAX, its pressure monitoring function continues to operate and still monitors for pressure data from any previously learned Accused Sensor.

27.     The ALM Accused Receiver is capable of the same auto-learn functionality as the CORAX.

28.     The ALM device does not monitor pressure.

29.     No Accused Receiver has any ID codes stored at the start of vehicle production.

30.     Schrader made and sold Generation 1 ("GEN 1") TPMS systems to General Motors ("GM") that used both FSK (GM domestic) and OOK (GM exports) modulation schemes.  Those TPMS products were shipped to GM in the United States at least as early as 1997.  For the GM export version, Schrader made both the TPMS sensor and the receiver, and for the GM domestic version Schrader only made the sensor.

31.     Schrader made, shipped to the United States, and sold to Chrysler a TPMS system as early as 1996 for the 1997 Prowler model that included transmitters (sensors) and a receiver and used an OOK modulation scheme.

## IV.    Issues of Law

The parties expect the following issues of law to be relevant.  To the extent that any issues of fact set forth above may be considered issues of law, the parties incorporate those portions by reference.  These issues of law may change based on the Court's decisions on certain motions *in limine* or based on the Court's rulings on certain other motions.  The parties reserve the right to modify or supplement their list of issues of law that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent order of the Court or by agreement of the parties.

1.      Whether Plaintiffs have proven by a preponderance of the evidence that Defendants indirectly infringe claim 6 of the '524 Patent.  *See* 35 U.S.C. § 271(b); 35 U.S.C. § 271(c).

2.      The amount, if any, of compensatory damages that Plaintiffs have proven by a preponderance of the evidence that should be awarded in the form of a reasonable royalty.  *See* 35 U.S.C. §284.

3.      Whether either party has proven by a preponderance of the evidence that this case is exceptional.  *See* 35 U.S.C. § 285.

## V.    Sequestration of Witnesses

The parties agree that, pursuant to Fed. R. Evid. 615, the Court should prevent fact witnesses from hearing the testimony of other witnesses.  The parties further agree that in accordance with provision (2) of Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative.  The parties further agree that this exclusion rule will not apply to expert witnesses.  The parties further agree that witnesses who are otherwise sequestered pursuant to this paragraph may be present in the courtroom during Opening Statements, and after they have testified.

## VI.     Witnesses

The parties shall identify by email to opposing counsel their corporate representative no less than two (2) business days before the first day of the currently scheduled trial, i.e., by Thursday, February 6, 2020.

The parties shall provide a list identifying the specific witnesses that they intend to call on direct, either live or by deposition, and the order in which they will be called, by 7:00 p.m. (all times are Eastern time) two (2) calendar days before they intend to call those witnesses at trial.  (For example, if a party intends to call a witness on Monday, that party shall disclose that witness's name to the opposing party no later than 7:00 p.m. on Saturday.)  For witnesses to be presented "live," the presenting party shall also include at the time of disclosure a list of exhibits to be used with each witness.  Any objections shall be provided by 7:00 p.m. one day before the witness is to be called.  No deviations from this notice shall be permitted except by agreement of the parties or for good cause shown.  The parties shall meet and confer to resolve any disputes, and if the objections to the disputed testimony are not resolved by the parties' meet and confer, they will be presented to the Court as appropriate before trial resumes on the day of their anticipated use.

For a witness who is to be presented by designation, the designating party shall also provide notice of the specific pages and lines of the deposition transcript it intends to use.  The other party shall, within 24 hours after receiving the designations, identify any objections and any counter-designations by specific page and line numbers.

Each party shall be bound to call the witnesses identified in its list in the order and manner (i.e., live or by designation) identified, except by agreement of the parties or for good cause shown.  Nonetheless, the listing of a witness on a party's witness list or inclusion of witness's deposition testimony on a party's list of designations does not require the party to call

18

that witness to testify live or by designation, and does not imply or establish the listed party has the power to compel the live or deposition testimony of that witness or make that witness available to the opposing party.  Once a party has identified a witness on its final list, if the party later elects not to call that witness, it must make that witness available to be called by the other party, if the other party so chooses.  Once a party has identified a witness on its final list, if the party later elects not to call that witness, the other party may also elect to designate deposition testimony for the witness.

By 9:00 a.m. two days before it intends to rest its case-in-chief, the resting party shall give the other party notice of its intention to rest so that the parties have an opportunity to comply with the other notice provisions of this Order.

Unless the parties reach an alternative agreement or the Court orders otherwise, the order of the presentation of evidence will follow the burden of proof.  Plaintiffs shall present their case first on the issues of infringement and damages.  Defendants may then present their response on infringement and damages along with their case-in-chief on licensing (patent exhaustion) defense.  Plaintiffs may then present their response on validity and licensing and rebuttal on infringement and damages. The parties dispute whether Defendants may then present a rebuttal on their licensing/exhaustion defense.[3]

Each party will provide the other with a good-faith list of witnesses it intends to call live at the trial by January 31, 2020, without prejudice to the right to remove any such witness.

---

[3] Plaintiffs request that the Court resolve whether Defendants should be permitted to put on a rebuttal regarding their licensing/patent exhaustion defense.  Plaintiffs articulate their position on the issue below in Section XVII(F) (List of other Matters for Consideration and/or Resolution by the Court).  Defendants object to the issue being raised as part of the Pretrial Order as detailed below.

Except as set forth herein, no fact or expert witness called by a party shall be permitted to testify in its case-in-chief or responsive case at trial if not identified in this Order, unless the Court determines that good cause exists and that in the interests of justice such witness should be called.  All witnesses, including potential rebuttal witnesses, should be identified in this Order; the listing of a witness on a party's witness list or inclusion of witness's deposition testimony on a party's list of deposition designations does not require the party to call that witness to testify live or by designation, and does not imply or establish the listed party has the power to compel the live testimony of that witness or make that witness available to the opposing party.

### A.     List of Witnesses Plaintiffs Expect To Or May Call

Plaintiffs presently intend to call the following witnesses.  The witnesses will testify live except where otherwise indicated.  Plaintiffs reserve the right to call any of the following witnesses to provide rebuttal testimony, and reserve the right to amend their list (including whether a witness will be called live or by designation) in view of events at trial.

### 1.     Expert witnesses

**Dr. Dean Neikirk.** Dr. Neikirk is a professor of electrical and computer engineering with over thirty-five years of experience in the technologies relevant to TPMS.  These technologies include electromagnetic sensors and detectors, radio frequency (RF) devices, and wireless pressure sensors used in automobiles. Dr. Neikirk has also been involved in research, funded by DARPA, where he collaborated with companies such as Firestone concerning devices for monitoring tire pressure and temperature.  He has previously given expert testimony in many other cases relating to electrical engineering and electromagnetics, including TPMS.  He will testify on issues related to infringement and validity.

**Mr. Chris Bakewell**.  Mr. Bakewell is a leading expert in economics, finance, and statistics, and is a Managing Director of Duff & Phelps, LLC, an international consulting firm that specializes in financial advisory services.  He is a financial expert, an Accredited Senior Appraiser in Business Valuation, a Certified Licensing Professional, and has served as an expert in dozens of patent litigation matters.  He will testify on damages-related issues.

## 2.     Non-expert witnesses

- Bailie, Ivan (by designation)

- Leeman, Karl (live)

- Ruchti, Heinz (live)

- Strahan, Samuel (live or by designation)

- Thompson, Graeme (by designation)

- Völlm, Ernst (live)

- Wacker, Carl (live or by designation)

Plaintiffs reserve the right to supplement, amend or modify this witness list prior to or during trial based on case developments and/or in light of any order regarding the scope of the trial or in light of any information submitted by Defendants as part of their pretrial filings or otherwise.  Plaintiffs also reserve the right to call any witness that appears on Defendants' witness list without waiving any objections to the admissibility of testimony offered by Defendants.  Plaintiffs reserve all rights to call the witnesses by deposition as identified in their deposition designations or counter-designations.  Plaintiffs reserve the right to call any other witnesses as necessary for impeachment and/or rebuttal.  If Defendants challenge the authenticity of any documents, articles or things presented by Plaintiffs at trial, Plaintiffs reserve the right to call additional witnesses as may be required solely for document authentication and

admissibility.  Plaintiffs also reserve the right to substitute witnesses should one of the individuals listed in the disclosure not be available at the time of trial.  Plaintiffs' representatives, employees, former employees, agents and witnesses and/or any individual represented by Fish & Richardson P.C. ("Fish") should be contacted through Fish.

### B.     Witnesses Defendants Expect To Call

Defendants presently intend to call the following witnesses.  The witnesses will testify live except where otherwise indicated.  Defendants reserve the right to call any of the following witnesses to provide rebuttal testimony, and reserve the right to amend their list (including whether a witness will be called live or by designation) in view of events at trial.

### 1.     Expert Witnesses

**Dr. Ronald D. Williams:**  Dr. Ron Williams is a senior member of the Institute of Electrical and Electronics Engineers (IEEE). During the 1990's, he served two terms (six years) on the Board of Governors of the IEEE Computer Society.  He also served two terms (two years) as a Vice President of that professional organization and was a recipient of the Golden Core award from the IEEE Computer Society and the Third Millennium Medal from the IEEE. He will testify on issues related to infringement and validity.

**Dr. Christine S. Meyer:**  Dr. Christine Meyer is a Managing Director and Chair of NERA's Intellectual Property Practice, and founding member of the firm's Life Sciences Industry Group. Dr. Meyer is considered one of the foremost testifying economists in the areas of complex commercial litigation involving intellectual property, antitrust claims, and commercial damages in the United States and Canada. Dr. Meyer has analyzed economic issues in a wide range of industries, with much of her recent work involving pharmaceuticals. She has been retained on behalf of both branded and generic firms in matters that have included small molecule as well as

biologic products. Her work has also included the valuation of patents, licenses, and potential

business acquisitions. She will testify on damages-related issues.

### 2.      Non-Expert Witnesses

- Mr. Carl Wacker (live or by designation)

- Mr. Sam Strahan (live or by designation)

- Mr. Ron Skarupa (live)[4]

- Mr. Marc Haibeck (live)[5]

- Mr. Ivan Bailie (live or by designation)

- Mr. Ernst Völlm (live or by designation)

- Mr. Karl Leemann (live or by designation)

- Mr. Rutchi Heinz (live or by designation)

### C.      Testimony by Designation

Plaintiffs' direct deposition designations are attached as <mark>**Exhibit 1**</mark>.  Defendants' direct

deposition designations are attached as <mark>**Exhibit 2**</mark>.  The parties have agreed to provide their

counter-designations and counters to counter-designations based on the following timelines

contained in this Order.

Each party will provide the other with a list of designations that it intends to introduce

along with exhibits the party intends to admit through the designated testimony, by 7:00 p.m.

four (4) calendar days before the designations are intended to be used in court.  Each party will

---

[4] The parties request that the Court resolve whether Schrader's ZR-1 witnesses (Mr. Skarupa and Mr. Haibeck) will be permitted to testify at trial now that validity is no longer an issue in the case.  The parties articulate their respective positions on the issue below in Section XVII(F) (List of other Matters for Consideration and/or Resolution by the Court).

[5] Please see Footnote No. 4.

identify any objections and/or counter-designations by 7:00pm the following day, three (3) calendar days before the designations are intended to be used in court.  The parties will then meet and confer by 9:00 p.m. that same night to confirm the status with respect to any previously designated counter-designations and objections.  New materials may not be added without good cause.

Once the parties have met and conferred, they will submit any remaining disputed designations for the Court's consideration by 7:00 p.m. the following day (two (2) calendar days before the testimony is to be used in Court).  The party introducing the deposition testimony shall submit, on behalf of all parties: (i) a copy of the entire testimony of the witness at issue, clearly highlighting the designations and counter-designations; and (ii) a cover letter clearly identifying any pending objections, as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the testimony or waiver of objection to the use of the testimony.

For each witness to be called by designation, the parties will agree to a short statement for the Court to read to the jury to introduce the witness.

All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.  The manner of using counter-designations at trial shall be in the same manner (video versus read transcripts) as that used for the designation sought to be rebutted, such that all designations and counter-designations will be played or read to the jury, as the case may be, as one consecutive segment in the order the testimony appears in the transcript.  If a party offers video testimony, that party

shall be responsible for including video portions of counter-designated testimony that is designated as described in this section.  If a party does not offer video testimony, that party need not offer video of the other party's counter-designations.  The party who originally designated the testimony may elect whether it will be played or read.

When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

### D.    Impeachment with Prior Inconsistent Testimony

The parties agree that the Court should allow objections to the use of deposition and other prior testimony for impeachment purposes, including objections based on lack of completeness and/or lack of consistency.  Prior statements made under oath, such as prior testimony or sworn statements in declarations, expert reports and the like, can be used to impeach a testifying witness and those sworn statements can be read, played, or shown to the jury during the impeachment unless an objection is sustained by the Court.  To effect this, during a cross examination, the examining counsel will announce to the Court that they would like to offer the impeachment testimony (for example) and identify the testimony before it is read or shown.

Counsel presenting the witness will then be permitted to object that the proposed testimony is not proper impeachment or seek to have additional testimony included in the reading and the Court will rule on any such objection prior to use or publication of the testimony to the jury.

E.       **Objections to Expert Testimony**

The parties request that the Court rule at trial on objections to expert testimony as beyond the scope of prior expert reports, taking time from the parties' trial presentation to argue and decide such objections.

VII.   **Exhibits**

A.       **Exhibits**

Plaintiffs' exhibit list is attached as **Exhibit 3**.  Defendants' exhibit list is attached as **Exhibit 4**.  Each party has set forth objections to any exhibit in the other party's exhibit list with citation to the Federal Rules of Evidence.  Plaintiffs' evidentiary exhibits are identified by numbers prefixed with "PX."  Defendants' evidentiary exhibits are prefixed with "DX."

This Joint Final Pretrial Order contains the parties' good-faith efforts to identify the maximum universe of exhibits to be used in any party's case-in-chief.  Nonetheless, the parties have agreed that the deadline to supplement the exhibit list to include additional exhibits is **January 27, 2020**, after which the exhibit list shall not be supplemented without approval of all parties or leave of the Court, on good cause shown.

The parties agree that documents are *prima facie* genuine and authentic and have been prepared in the ordinary course of business on or about the dates that are reflected on the document if they are (a) a document produced in this case from a party's files that on its face appears to have been authored by an employee, officer, or agent of that party; or (b) a United States or foreign patent office publication.  The parties reserve the right with respect to individual documents to adduce proof to the contrary or to require that the offering party provide authenticating evidence or evidence the document is not a business record if the opposing party has a reasonable basis to believe the document is not authentic or not a business record and if an

appropriate objection was made by the opposing party on the exhibit lists attached to this Order. This stipulation shall not be deemed or interpreted to be a waiver of any other objections a party may have or a stipulation that any document is admissible in evidence.

Any documents or prior sworn testimony or portion thereof, not specifically identified herein or offered into evidence, may still be used at trial for purposes of cross-examination, impeachment or rehabilitation, if otherwise competent for such purposes, absent any order to the contrary (e.g. materials the Court has struck from the case).

Unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original, a duplicate of any document or photograph may be marked for identification, and, if otherwise admissible, offered and received into evidence with the same force and effect as the original, subject to any and all objections as could be made to the original, and on condition that the original of any such duplicate, if within the custody or control of the offering party, be available for inspection at the trial by 7:00 pm two days before such duplicate is first used.

Unless agreed to otherwise, each party will provide to the other party a written list of exhibits, by number and witness(es) for whom the exhibits will be used, that it intends to use on direct examination in Court. For live witnesses and for witnesses called by deposition, this list will be provided by 7:00 p.m. two nights before the trial day on which the exhibits are intended to be used and the witnesses are intended to be called. After receiving each exhibit list, the other party shall identify any objections to exhibits the following day by 7:00 p.m., and the parties will meet and confer regarding any unresolved objections by 9:00 p.m. that evening and will present any unresolved issues to the Court the morning of the proposed use of the disputed exhibit. Objections will be resolved by the Court prior to the jury being seated for the morning session if

possible.  If any of the exhibits change after the deadline, the party intending to use the exhibit

will promptly notify the opposing party of the change(s).  Failure to comply with these

procedures, absent an agreement by the parties and approval by the Court, will result in waiver of

the use of an exhibit or waiver of objection to the exhibit.

Any party may use an exhibit that is listed on the other party's exhibit list, to the same

effect as though it were on its own exhibit list, subject to all evidentiary objections.  Any exhibit,

once admitted at trial, may be used equally by each party for any proper purpose in accordance

with the Federal Rules of Evidence.  The listing of a document on a party's exhibit list is not an

admission that such document is relevant or admissible when offered by the opposing party.  The

fact that an exhibit is listed on a party's exhibit list does not mean that party believes the exhibit

would be admissible if offered by the other party.  If a party attempts to introduce an exhibit

listed only on the other party's exhibit list, the listing party reserves the right to object to such

introduction, and need not list objections to its own exhibits as part of the Pretrial Order.  In

addition, each party reserves the right to make objections under Federal Rules of Evidence 104,

105, 401, 402, and 403 to any evidence offered by the other party, at the time such evidence is

offered, in view of the specific context in which such evidence is offered.

Absent a stipulation between the parties, no exhibit will be admitted unless offered into

evidence through a witness, who must at least be shown the exhibit.  At some point before the

completion of the witness's testimony, any party that has used an exhibit with the witness and

wishes that exhibit to be admitted into evidence should formally move the exhibit into evidence,

by exhibit number.  Exhibits may not be published, displayed, or otherwise shown to the jury

until after they have been admitted into evidence.  Once admitted, counsel may publish exhibits

to the jury without requesting to do so.  During reading or viewing deposition testimony, non-

objected to or otherwise admissible exhibits may be shown to the jury prior to being admitted into evidence.

Each party will make available for inspection any physical exhibits, whether demonstrative or evidentiary, they intend to use at trial no later than 7:00 pm two days before such physical exhibits are first used.  Objections to physical exhibits, if any, shall be due by 7:00 p.m. the day before their intended use.

After opening statements, exhibits may not be published, displayed or otherwise shown to the jury until after they have been admitted into evidence, except for purposes of impeachment. Impeachment evidence must be treated as described in Section V(D), above.

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.  Plaintiff will deliver to the Courtroom Deputy a completed AO Form 187 identifying the parties' joint exhibits.

The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

A party may replace poor print or digital quality copies of exhibits with improved or higher print or digital quality copies.

To the extent it has not already done so, each party shall provide to the other party, for delivery on ==January 30, 2020== a copy of its exhibits with exhibit labels or make available for inspection any unique or physical exhibits.

Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness.

None of the foregoing stipulations shall serve as a waiver of any other objections a party may have to any trial exhibits, or abrogate the requirement that the party offering an exhibit into evidence satisfy any other rules governing the admissibility of evidence set forth in the Federal Rules of Evidence, the Federal Rules of Civil Procedure, this Court's Local Rules, the Court's practices, or any other applicable rule or regulation.  The parties agree to meet and confer in good faith to resolve objections to trial exhibits prior to their introduction at trial.

**B.     Demonstrative Exhibits**

Plaintiff's demonstrative exhibits will be identified by numbers prefixed with "PDX." Defendants' demonstrative exhibits will be identified by numbers prefixed with "DDX."

The parties will exchange demonstratives and a list of exhibits to be used in opening statements by 12:00 p.m. (noon) the day before opening statements.  The parties will provide any objections to such demonstratives by 4:00 p.m. on the day before opening statements.  The parties shall meet and confer to resolve any possible disputes or objections to such demonstratives by 5:00 p.m. the day before opening statements.

A party will provide demonstrative exhibits to be used in connection with direct examination by 7:00 p.m. the day before their intended use, and objections will be provided no later than 9:00 p.m. the day before their intended use.  If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form.  However, for video or animations, the party seeking to use the demonstrative will provide it to the other side via email and on a DVD or CD in the form in which it is proposed to be used at trial.  For irregularly sized physical exhibits, the

party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

The parties shall meet and confer on any objections to the demonstrative exhibits by 10:00 p.m. one day before their intended use.  If good faith efforts to resolve the objections fail, the objecting party shall bring its objections to the Court's attention the morning of the proposed use of those exhibits.  Objections will be resolved by the Court prior to the jury being seated for the morning session if possible.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

## VIII.   Damages

At trial, Plaintiffs will seek damages in the form of a reasonable royalty pursuant to 35 U.S.C. § 284, as set forth in their expert's reports, as compensation for Defendants' alleged past infringement of the '524 patent.  Plaintiffs will further seek an award of prejudgment and post-judgment interest, an award of attorneys' fees pursuant to 35 U.S.C. § 285, and interests, costs, and disbursements as justified under 35 U.S.C. § 284 and/or Federal Rule of Civil Procedure 54.

Defendants likewise will further seek an award of attorneys' fees pursuant to 35 U.S.C. § 285, and interests, costs, and disbursements as justified under 35 U.S.C. § 285 and/or Federal Rule of Civil Procedure 54.

## IX.   Bifurcated Trial

The parties have not sought bifurcation.

31

X.     **Motions *in Limine***

Plaintiffs' Motions in *Limine* are attached in ==**Exhibit 5**==.  Defendants' Motions in *Limine* are attached in ==**Exhibit 6**==.

XI.    **Discovery**

Each party has completed discovery.

XII.   **Number of Jurors**

There shall be eight jurors, all of whom shall deliberate if still able to do so by the time of deliberations, provided that there shall be a minimum of six (6) jurors who deliberate and render a verdict.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

XIII.  **Non-Jury Trial**

The parties request that, to the extent necessary, any remaining legal issues that are to be decided by the Court be addressed in post-trial briefing or other proceedings as the Court deems appropriate.  Following trial, the parties will meet and confer regarding a post-trial schedule and page limits, and submit said schedule to the Court on or before March 18, 2020.

XIV.   **Length of Trial**

The case is currently set for a five-day jury trial beginning Monday, February 10, 2020.

The trial will be timed.  Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by the other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' argument on objections a party raises (outside the presence of

the jury) to another party's exhibits and demonstrative exhibits if those objections are unsuccessful.

The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court may terminate that party's trial presentation.

Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request 25 hours for trial presentation (12.5 hours per side).

## XV.   Motions For Judgment As A Matter Of Law

The parties agree that for motions for judgment as a matter of law (JMOL) generally, the party moving for JMOL will so move orally during a break at the close of all evidence out of the presence of the jurors.  The Court can then decide, based on the motions presented orally, whether to entertain argument or further briefing.  The parties also agree that any renewed JMOL motions will be addressed in connection with the schedule for post-trial briefing to be set by the Court.

## XVI.  Amendments to Pleadings

The parties do not presently expect any amendments to the pleadings, subject to the Court's rulings on pending motions or otherwise.

## XVII. Additional Matters

### A.   Briefing Schedule

The briefing schedule for all post-trial motions, including renewed motions for judgment as a matter of law and motions for a new trial will be decided after the trial.  The parties will submit a proposed schedule to the Court no later than March 18, 2020.

33

### B.      Jury Notes

The parties agree that the jurors should be permitted to take handwritten notes during the presentations of the parties and that jurors be permitted to bring these handwritten notes, along with a notebook containing the asserted patent (as provided by the parties) into the deliberation room.  The parties further propose that the jurors be instructed not to share the notebooks with each other (though they can discuss the contents of their notes) and that the notebooks be collected and destroyed after the verdict without review.

### C.      Setup of Electronic and Computer Devices

The parties request that the Court grant access to the Courtroom on the business day before trial begins for the purposes of setting up electronic and computer devices.  To the extent both parties are utilizing common equipment in the Courtroom, the parties will share the cost of that equipment.

### D.      Federal Judicial Center Introduction to the Patent System Video

The parties stipulate that the Federal Judiciary Center video will be played as part of the Court's preliminary jury instructions.

### E.      Agreed Motions *in Limine*

In light of the Court's Memorandum Order, the parties agree, and are hereby advised, that they may not offer evidence, testimony or argument at trial concerning the IPR proceedings of the '524 patent or reference any invalidity or validity findings made during those proceedings.

### F.      List of other Matters for Consideration and/or Resolution by the Court

The parties identify the following additional matters for the Court.

### 1.      Rebuttal on Schrader's Licensing/Exhaustion Defense

**Plaintiffs Position:** Defendants should not be permitted to put on a rebuttal regarding their licensing/patent exhaustion defense.  First, Defendants have no witnesses that can testify about the issue.  Defendants do not dispute that their experts did not address the licensing/exhaustion defense in their reports.  (*See* D.I. 149.)  Second, Defendants admit they refused to designate a Rule 30(b)(6) witness to testify about "the complete factual basis and supporting evidence" for their licensing/patent exhaustion defense identified in Plaintiffs' deposition notice. Defendants indicated that their witnesses "lack[] any knowledge" of Plaintiffs' license agreements.  (*Compare* D.I. 125 at 2-3, with D.I. 149 at 1.)

**Defendants' Position:** Defendants object to this dispute being raised at this time because it is essentially a modified version of Plaintiffs' no patent exhaustion summary judgment motion the Court recently denied (D.I. 193, pg. 13).

### 2.      Schrader's ZR-1 Witnesses (Mr. Skarupa and Mr. Haibeck)

**Plaintiffs' Position:** Plaintiffs ask the Court to strike Mr. Skarupa and Mr. Haibeck from Defendants' witness list.  Defendants identified both individuals as having information relating to the ZR-1 Clevite/EPIC low tire warning system ("ZR-1 system"), and only referenced these individuals in connection with their invalidity expert report.  Because Defendants are estopped from presenting an invalidity defense related to the ZR-1 system, Defendants now argue the testimony is relevant because "the existence of the Epic sensor in the late 1980s relates to the dispute between experts on what is the advantage of the patent claim over old modes or devices and therefore is at least relevant to two of the G-P Factors."  Schrader's damages expert, however, did not rely on or consider information or testimony from these individuals in her report (and, in fact, did not even mention them).  Further, even if testimony from these witnesses were relevant to damages, Defendants cannot explain why they cannot instead use their documentary evidence the Court has already determined to be cumulative of the ZR-1 system.  Defendants' reliance on these witnesses appears to be an attempt to put on their estopped invalidity case in the guise of damages evidence, something Plaintiffs oppose and ask the Court to prevent.  Alternatively, in the event the witnesses are allowed to testify, Plaintiffs ask the Court to order pretrial depositions of both individuals because they have not yet been deposed.  The parties had previously agreed to proceed with pretrial depositions of people that were not deposed during the discovery period.  Before the Court issued its summary judgment order, the parties had scheduled pretrial depositions of these individuals for January 23 and 24.  But in light of this dispute, Plaintiffs had requested that Defendants agree to move the depositions by two weeks (to February 5 and 6) so the parties could raise the issue with the Court at the January

35

31 pretrial conference.  Defendants opposed this request and contend that Plaintiffs have lost their chance to depose these individuals.

**Defendants' Position:** The evidence intended to be elicited by Messrs. Skarupa and Haibeck relate directly to an issue in dispute between the two  damages experts.  Plaintiffs expert contends that for Georgia-Pacific Factors No. 9-10 the advantages of the patented product over old modes or devices relate to the benefits of On-Off Keying (OOK).  (D.I. 159, pgs. 486-7).  Defendants expert rebuts that opinion based in part on the anticipated testimony of the two witnesses to show that OOK modulation was clearly not the patented advantage over prior models or devices in view of the Epic Sensor and its use in the GM Corvette as early as the late 1980s. The Epic sensor and its use in the GM Corvette was referenced multiple times in Defendants' expert non-infringement and damages rebuttal reports. Plaintiffs arguments that the evidence is cumulative or that Defendants should choose other forms of evidence is improper, especially at this stage of the case.   Defendants maintain that Plaintiffs improperly "postponed" the scheduled depositions based on only this manufactured motion to exclude and should not justify rescheduling third party depositions, especially so close to trial.

3.      **Use of the Court's Claim Construction Order:** Plaintiffs request that the Court clarify permissible use of its claim construction order during trial.  Plaintiffs are concerned that Defendants and their experts will quote from more than just the issued claim constructions contained in that Order during trial, and attribute those quotations to the Court.

Defendants do intend to present language by the Court in the Markman Memorandum (D.I. 104, pg. 18) further clarifying the two operating states as mutually exclusive.  That language was certainly considered by both technical experts as part of their analysis and opinions and should not be excluded from evidence presented to the jury as a basis for their respective opinions.

# XVIII. Settlement

The parties have in good faith explored resolution of this controversy by settlement but no agreement has been reached.

**IT IS HEREBY ORDERED** that this Joint Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

Dated: _____

_____
UNITED STATES DISTRICT JUDGE


APPROVED AS TO FORM AND
SUBSTANCE


_____
ATTORNEY FOR PLAINTIFFS


_____
ATTORNEY FOR DEFENDANTS